UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FALISCIA C. KNUCKLES, on behalf
of herself and all others similarly situated,

        Plaintiff,

v.                                              Civil Case No. 15-10175
                                              Honorable Linda V. Parker

MARY JANE ELLIOTT, PC,

        Defendant.
_____/

## OPINION AND ORDER GRANTING FINAL APPROVAL OF SETTLEMENT

Plaintiff Faliscia Knuckles filed this lawsuit on behalf of herself and all those similarly situated, alleging that a debt collection notice sent by Defendant Mary Jane M. Elliott P.C. ("Defendant") violates the Fair Debt Collection Practice and Michigan's Regulation of Collection Practices Act. The parties reached a class-wide settlement and this matter presently is before the Court for final approval of the settlement. The Court held a final approval hearing on May 17, 2016. For the reasons that follow, the Court grants final approval of the class-wide settlement.

## I.  Background

### A.  Generally

Ms. Knuckles initiated this putative class action lawsuit against Defendant on January 16, 2015.  In her Complaint, Ms. Knuckles claims she received a letter from Defendant on or around September 3, 2014, seeking to collect a consumer debt Ms. Knuckles incurred from Synchrony Bank.  Ms. Knuckles contends that Defendant's letter failed to inform her of her need to seek verification of the debt in *writing* within thirty (30) days, as required by the law.  In other words, Ms. Knuckles claims that the debt collection letter, as written, encourages debtors to verbally contact Defendant regarding the debt.

Ms. Knuckles filed a motion for class certification shortly after filing her Complaint.  (ECF No. 3.)  Defendant filed an Answer to the Complaint on February 25, 2015.  (ECF No. 9.)  The Court thereafter entered a scheduling order establishing *inter alia* a discovery deadline of September 30, 2015, and a dispositive motion cut-off of October 30, 2015.  (ECF No. 11.)  On April 13, 2015, Ms. Knuckles filed an Amended Complaint adding no new claims.  (ECF No. 13.)  She filed a renewed motion for class certification on August 17, 2015.  (ECF No. 16.)

In her motion, Ms. Knuckles informed the Court that the parties engaged in discovery and agreed to engage in settlement discussions.  She further indicated

that the parties thereafter reached a settlement agreement, which Ms. Knuckles signed on October 13, 2015.[1] (ECF No. 19, Ex. 1.) On October 16, 2015, Ms. Knuckles filed a motion seeking preliminary approval of the settlement, appointment of Ms. Knuckles as Class Representative and Brian Parker as Class Counsel, and certification of a Settlement Class. (ECF No. 19.) The Court entered an order granting Ms. Knuckles' motion on December 9, 2015, scheduling a fairness hearing for April 20, 2016. The hearing subsequently was moved to May 17, 2016.

### B. The Class, Class Representative, and Class Counsel

The parties' settlement agreement (hereafter "Settlement") certifies for settlement purposes only the following Class pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3):

> All persons who, during the period of time from January 16, 2009, through the date of approval of the Settlement, received a letter from Defendant that was sent in an effort to collect a debt incurred primarily for personal, family or household purposes, which failed to notify the person that the he or she had thirty (30) days within which to dispute the debt in writing, as provided by 15 U.S.C. § 1692g(4).

(ECF No. 19, Ex. 1 ¶ 1.) The Settlement provides that if more than twenty-five (25) members of the Class opt out of the Settlement, either party has an independent right (but not obligation) to withdraw from the Settlement. (*Id.* ¶ 8.)

---

[1] The copy of the agreement submitted to the Court by Ms. Knuckles does not include a signature by Defendant or Defendant's counsel. (ECF No. 19, Ex. 1.)

At the fairness hearing, the Court expressed concern about the Class definition, specifically whether the inclusion of individuals who received a letter from Defendant "through the date of approval of the Settlement," meant the preliminary approval or final approval of the Settlement. If the latter were intended, individuals receiving a letter from Defendant after the preliminary approval order would not necessarily receive Notice of the lawsuit in a timely matter. In other words, as defined, an individual receiving a letter from Defendant *on the day before the fairness* hearing would be included in the Class; however, that individual would not have received notice nor the opportunity to object to the Settlement or to exclude him or herself from the Class. The parties informed the Court at the fairness hearing, however, that Defendant ceased sending the complained of letter in October 2015.

The Settlement does not include an agreement with respect to the appointment of Ms. Knuckles as Class Representative or Brian Parker as Class Counsel. It does state, however, that Ms. Knuckles will move for such appointments when she seeks preliminary approval of the Settlement. (*Id.* ¶ 1.) Ms. Knuckles in fact did seek the appointments of Class Representative and Class Counsel when she sought preliminary approval of the Settlement, and the Court made the appointments in its December 9, 2015 order. (ECF No. 21 ¶ 4, 5.)

## C.  The Settlement

The Settlement, as reached by the parties, requires Defendant to pay $7,910.00 ("Settlement Fund") to the Class Administrator within ten days of final approval of the Settlement.  (*Id.* ¶ 10.)  The Claims Administrator then will distribute $14.00 to each Class member who timely returns a valid Proof of Claim form.  (*Id.*)  Any portion of the Settlement Fund that is unclaimed by Class members after ninety (90) days shall result in a cy pres distribution to the National Consumer Law Center.[2]  (*Id.*)

Within ten days of final approval of the Settlement, Defendant shall send Ms. Knuckles' counsel, Brian Parker, a check made payable to Ms. Knuckles for $2,500.00, representing payment of statutory damages and a class incentive award.  (*Id.* ¶ 11.)  Within the same time frame, Defendant is required to send a check to Brian Parker, as Class Counsel, representing payment of the approved attorneys' fees and cost.  (*Id.*)

---

[2] "Cy pres" is a term meaning "as near as possible" and in class action settlements refers to the parties' plan for the "next best use" of the settlement funds that cannot be distributed to class members or remains unclaimed following the distribution. *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011) (internal quotation marks and citations omitted).  Cy pres payments like those proposed in this case can be approved when actual funds are "non-distributable," or " 'where the proof of individual claims would be burdensome or distribution of damages costly.' " *Id.* (quoting *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir.1990)). *In re Google Referrer Header Priv. Litig.*, 87 F. Supp. 3d 1122, 1132 (N.D. Cal. 2015)

In exchange for Defendant's payments, the Class members release Defendant and any and all of its past or present officers, directors, shareholders, members, agents, employees, representatives, predecessors, successors, assigns, attorneys, and insurers from any and all claims, causes of action, and/or demands that exist as of the date of the final order of approval, including all claims that were or could have been raised in the litigation. (*Id.* ¶ 12.)

### D.  Notice

The preliminary approval order required Defendant or its designee, within thirty days of the order of preliminary approval, to mail the Class Notice to the Class members at the most current address reflected in Defendant's records, with a notation on the envelopes requesting address correction. (*Id.* ¶ 6.)  If any notice is returned with a new address, Defendant or its designee was required to re-mail the notice to the new address. (*Id.*)  For any address returned as undeliverable, Defendant or its designee was required to take certain steps to identify a new address for the Class member. (*Id.*)  The preliminary approval order excuses Defendant or it designee from re-sending a notice returned by the postal service less than seven days before the final approval hearing. (*Id.*)

Within ten days after the filing of the motion for preliminary approval, Defendant also was required to notify the appropriate Federal and State officials of

the Settlement in accordance with the Class Action Fairness Act, 28 U.S.C. § 1715. (*Id.* ¶ 7.)

On April 6, 2016, Defendant filed the affidavit of Bailey Hughes outlining Defendant's compliance with the notice requirements. (ECF No. 26.) According to Hughes, Defendant appointed First Class, Inc. ("First Class") as Class Settlement Administrator. (*Id.* ¶ 2.) Defendant, through its counsel, provided First Class with list of Class members, containing 565 records. (*Id.* ¶ 3.) Prior to mailing the Notice to the individuals on the list, First Class took steps to verify the correctness of the addresses provided by Defendant and to remove duplicate records. (*Id.* ¶¶ 4, 5.) Twelve duplicate records were found, resulting in First Class mailing Notices to 553 Class members on December 30, 2015. (*Id.* ¶ 6.)

As of April 4, 2016, thirty-three (33) Notices were returned as undeliverable with no forwarding address or further information from the postal service. (*Id.* ¶ 8.)

Defendant's counsel filed an affidavit on December 18, 2015, indicating that notice of the proposed settlement had been mailed to the United States Attorney General and Attorney General for the State of Michigan in accordance with the Class Action Fairness Act. (ECF No. 24.)

### E.  Attorneys' Fees

The Settlement provides that Class Counsel may move for an award of attorneys' fees and costs not to exceed $22,500.  (*Id.* ¶ 13.)  Defendant agreed not to object to Class Counsel's fee and expense application not exceeding $22,500; in exchange, Class Counsel agreed not to seek an award exceeding that amount.  (*Id.*)  The parties otherwise agreed to bear their own fees, costs, and expenses incurred in connection with this litigation.  (*Id.* ¶ 24.)

Class Counsel filed an "unopposed" motion for attorneys' fees on March 9, 2015, in which he sought an award of attorneys' fees and costs totaling $20,350.000.  (ECF No. 25.)  The Court granted the motion at the fairness hearing.

### F.  Objections, Exclusions & Claim Forms

As of April 4, 2016, First Class had received no objections to the Settlement and no requests for exclusion.  (ECF No. 26 ¶¶ 9, 10.)  No objections or requests for exclusion have been received by the Court.  At the fairness hearing, however, the parties informed the Court that one request for exclusion from the Class had since been received from Ms. Michele Gray.

As of April 4, 2016, First Class had received fifty-six (56) valid Proof of Claim forms postmarked on or before the cutoff date of March 30, 2016.  (*Id.* ¶ 11.)  Two additional forms were received thereafter.  This means that 494 Class

members have not responded to the Notice. Stated alternatively, only approximately ten percent (10%) of Class members responded.

## II. Final Approval of Settlement Agreement

### A. Applicable Standard

Rule 23(e) of the Federal Rules of Civil Procedure sets forth the procedures for the settlement of class actions. Pursuant to the rule, the court's role is to determine whether the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, the court considers whether the interests of the class as a whole are better served if the litigation is settled rather than pursued." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003). As one judge in this District has observed:

> "In assessing the settlement, the Court must determine 'whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation.'" *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) (quoting *Fisher Bros. v. Cambridge-Lee Indus.*, 630 F. Supp. 482, 489 (E.D. Pa. 1985)). An appropriate range of reasonableness "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). Under this standard, "[a] just result is often no more than an arbitrary point between competing notions of reasonableness." *In re Corrugated Container Antitrust Litig. (II)*, 659 F.2d 1322, 1325 (5th Cir. 1981).

*Intl. Union v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363, at *21 (E.D. Mich. July 13, 2006), aff'd sub nom. *UAW v. Gen. Motors Corp.*, 497 F.3d 615

9

(6th Cir. 2007). Class counsel bears the burden of persuading the Court that the proposed settlement is fair, reasonable, and adequate. *Manual for Complex Litigation* § 21.631 (4th ed.).

Courts in the Sixth Circuit find eight factors relevant in considering whether a class action settlement is fair, adequate, and reasonable:

> "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest."

*Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009) (quoting *UAW v. Gen. Motors Corp.*, 497 F.3d at 631). "The district court enjoys wide discretion in assessing the weight and applicability of these factors." *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992); *see also Ford Motor Co.*, 2006 WL 891151, at *14 ("The court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case.").

In accordance with Rule 23, notice to a class certified under Rule 23(b)(3) must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must inform class members of the following:

10

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23.

### B. Application

At the fairness hearing, the Court informed the parties that it was not inclined to grant final approval of the Settlement in light of the small award to Class Members when compared to the cy pres distribution. With fifty-eight (58) of the 553 Class members submitting valid Proof of Claim forms, only $812.00 of the $7,910.00 Settlement Fund would be paid to Class members. In other words, approximately only ten percent (10%) of the Settlement Fund (or $812.00) would be distributed to Class members and approximately ninety percent (90%) or $7,098.00 would be distributed as cy pres to a third party. Thus, the real winner in the Settlement-- aside from Ms. Knuckles and Class Counsel-- would be the National Consumer Law Center. While the National Consumer Law Center might provide valuable services to the public, the Court does not believe that it is the purpose of FDCPA class action litigation to financially support such institutions.

Moreover, courts have a duty to examine cy pres distributions to assure that they are the "next best" remedy to direct payments to class members. *See*

*Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011). A district court should not approve a cy pres distribution "unless it bears a substantial nexus to the interests of the class members" in that it "account[s] for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members." *Lane v. Facebook, Inc.*, 696 F.3d 811, 821 (9th Cir. 2012) (quoting *Nachshin*, 663 F.3d at 1036). The Court suggested at the fairness hearing that an alternative pro rata distribution of the Settlement Fund would be fair, and the parties agreed on the record to such a distribution as an alternative to the $14 per Class member payment.

    The Court concludes that due process does not require notice to all Class members of this modification to the Settlement. District courts considering the issue hold that notice of an amendment is required only where the amendment " 'would have a material *adverse* effect on the rights of class members.' " *Keepseagle v. Vilsack*, 102 F. Supp. 3d 306, 313 (D.D.C. 2015) (emphasis added) (quoting *In re Diet Drugs Prods. Liability Litig.*, No. 99-20593, 2010 WL 2735414, at *6 (E.D. Pa. July 2, 2015)); *see also Harris v. Graddick*, 615 F. Supp. 239, 244 (M.D. Ala. 1985) ("Under these limited circumstances where the amendment is narrow and it is clearly apparent that the interests of the classes are not substantially impaired, the court is of the opinion that the notice already given is adequate and that additional notice is not required pursuant to Rule 23(e).");

Manual for Complex Litigation § 21.61 (4th ed.) ("if the fairness hearing leads to substantial changes adversely affecting some members of the class, additional notice, followed by an opportunity to be heard, might be necessary."). As the District Court for the District of Columbia further observed in *Keepseagle*, "where an amendment would merely 'provide many additional benefits, including additional funding for research related to a medical condition connected to the class's injury and a guarantee . . . regarding defendant's continued payment obligations,' no legal right was adversely affected and Rule 23(e) did not apply." 102 F. Supp. 3d at 313 (quoting *In re Diet Drugs*, 2010 WL 2745414, at *6) (brackets omitted). Additional courts have reached the same conclusion. *Shaffer v. Cont'l Cas. Co.*, 362 F. App'x 627, 631 (9th Cir. 2010) ("Although changes were made to the release after potential class members received the notice, the changes did not render the notice inadequate they narrowed the scope of the release."); *In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1111 (10th Cir. 2001) (supplement notice not required where a proposed amendment merely "expands the rights of class members"); *In re Prudential Ins. Co. Sales Practices Litig.*, 962 F. Supp. 450, 473 n. 10 (D.N.J. 1997) ("class members need not be informed of the Final Enhancements to the settlement because the Proposed Settlement is only more valuable with these changes."), *aff'd* 148 F.3d 283 (3d Cir. 1998).; *In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D.

351, 386 (E.D. Pa. 2015) ("Because these changes improved the deal for Class Members without providing any concessions to the NFL Parties, an additional round of notice for Class Member is unnecessary.").

The court's decision in *Keepseagle* is particularly instructive because the modification in that case involved the settlement agreement's provision for the cy pres funds. 102 F. Supp. 3d at 314. The court had to decide whether alternative procedures for distribution of those funds should be made, including a proposal by which the funds were paid directly to class members. *Id.* Citing several cases, the court concluded that no class member retained a live legal claim to those funds and thus the proposed modifications to the distribution of the funds did not alter the legal rights of class members. *Id.* at 314-15 (citations omitted). The court explained:

> Those who participated in the Settlement Agreement's process assented to the extinction of their legal claims through their participation. Those who did not participate but failed to opt out similarly had their legal claims extinguished. . . . Accordingly, no member of the Class retains a live legal claim.
>
> Nor does any individual class member have a property interest in the unclaimed funds . . .
>
> Because all class members have settled their legal claims and retain no property interest in the unclaimed funds, a modification of the procedures for distributing unclaimed funds as cy pres would not alter the legal rights of any class member. The class members are affected to the extent that they would like the Settlement Agreement to be modified to permit additional payments directly to class members. But that is not a harm caused by the proposed modification; rather, it

14

> stems from the plain language of the Settlement Agreement. The modifications to the cy pres distribution scheme therefore do not have a material impact on the legal rights of any class member, making Rule 23(e)'s procedural requirements inapplicable.

*Keepseagle*, 102 F. Supp. 3d at 314-16 (italics removed).

Similarly, in the present case, the modification involves changes to the agreed upon cy pres distribution and it improves the deal for Class members. As such, Class members who will receive a larger distribution and individuals who failed to opt-out or submit a Proof of Claim form-- and thus who have waived whatever rights they had in the Settlement Fund-- need not receive notice of the modification. However, the Court directed the parties to provide the one individual who chose to opt-out of the Class with notice of the modification and an opportunity to rejoin the Class.[3] *See In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. at 386 (providing notice of settlement agreement amendments which improved the deal for class members to class members who opted out, and allowing those individuals to rejoin the class, even though re-notice to remaining class members was unnecessary).

---

[3] On July 7, 2016, Defendant submitted the affidavit of one of its attorneys, Jason M. Renner, who states that he sent a letter to Michele Gray, the individual who opted-out of the Class. (ECF No. 30.) The letter, which is attached to Mr. Renner's affidavit, informs Ms. Gray of the modification in the Settlement terms and her opportunity to rejoin the Class if she submits an enclosed Proof of Claim form before July 2, 2016. (*Id.*, Ex. A.) In his affidavit, Mr. Renner provides that Ms. Gray did not return the Proof of Claim form or otherwise contact him as of July 7, 2016. (ECF No. 30 ¶¶ 4, 5.)

15

At the fairness hearing, the Court conditionally granted final approval of the proposed class action settlement with the modification.  As the Court stated on the record, applying the relevant factors, the modified settlement agreement is "fair, reasonable, and adequate."  The Court additionally granted final certification of the Settlement Class.

Accordingly,

**IT IS ORDERED** that the Court **GRANTS** final approval of the Settlement.

                                                           s/ Linda V. Parker
                                                           LINDA V. PARKER
                                                           U.S. DISTRICT JUDGE

Dated: July 20, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, July 20, 2016, by electronic and/or U.S. First Class mail.

                                                           s/ Kelly Winslow for Richard Loury
                                                           Case Manager